**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

        **Plaintiff,**

v.                                            **Cr. No. 07-2428 JH**

ROBERT GUTIERREZ,

        **Defendant.**

## MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS

      This matter comes before the Court on Defendant Robert Gutierrez' *Motion to Dismiss Indictment Without Prejudice on the Basis That the Current United States Attorney Has Been Unconstitutionally Appointed and to Recuse This Judge and All U.S. District Court Judges for the District of New Mexico* [Doc. No. 25].  Having reviewed the briefs of counsel and additional legal authority, the Court finds that the Motion is without merit and should be denied.

## BACKGROUND FACTS

      On December 5, 2007, the United States filed the indictment in this case [Doc. No. 2], which was signed by an attorney for the government, a validly appointed Assistant United States Attorney. Due to the resignation of United States Attorney David Iglesias on February 28, 2007, First Assistant United States Attorney Larry Gomez had become Acting United States Attorney under the Vacancies Reform Act, 5 U.S.C. § 3345(a)(1).  On September 26, 2007, Acting Attorney General Peter Keisler had appointed Mr. Gomez as United States Attorney pursuant to 28 U.S.C. § 546(c)(2). This temporary appointment expired 120 days later, and on January 25, 2008, the judges of this Court appointed Gregory J. Fouratt as United States Attorney in accordance with 28 U.S.C. § 546(d), which provides:

(d) If an appointment expires under subsection (c)(2) of this section, the district court for such district may appoint a United States attorney to serve until the vacancy is filled. The order of appointment by the court shall be filed with the clerk of the court.

## DISCUSSION

Gutierrez moves the Court to dismiss the indictment against him "on the basis that the prosecution is being pursued by a United States Attorney who has been unconstitutionally appointed." Doc. No. 25 at p. 1. Gutierrez contends that by exercising their power under 28 U.S.C. § 546(d), the judges of this judicial district violated the Appointments Clause, and that Mr. Fouratt's appointment violates Constitutional separation of power principles. Gutierrez further argues that all Judges within the United States District Court for the District of New Mexico should recuse themselves from hearing his motion due to their alleged bias or appearance of bias. The Court finds none of defendant's arguments persuasive.

## I.    SECTION 546(d) IS CONSTITUTIONAL

Gutierrez argues that "[s]ince there is not a constitutionally appointed United States Attorney whose authority flows from the Executive Branch of government, the continued prosecution of Mr. Gutierrez is constitutionally impermissible and this case must be dismissed without prejudice until a constitutionally valid United States Attorney is appointed." Doc. No. 84 at p. 3. Gutierrez' position is without merit.

### A.    Section 546(d) Does Not Conflict With Either the Constitutional Principles Embraced by the Framers or With Historical Practice

Contrary to what Gutierrez argues, the draftsmen of the Constitution did not perceive the three branches of government as entirely separate with mutually exclusive powers, nor is the role of a United States Attorney "quintessentially executive." In *United States v. Gregory Rose*, Cr. No.

2

07-2145 BB (Mem. Op. Feb. 29, 2008) (Doc. No. 62, unpublished), United States District Judge Bruce Black conducted a thorough analysis of the history of the role of the prosecutor in this country from the colonial period through modern times.  That history demonstrates not only that the draftsmen of the Constitution did not perceive the three branches of government as completely separate with mutually exclusive powers, but also that federal courts have long held, to some degree, the power of appointment of federal prosecutors.  For example, in 1863 Congress authorized the federal circuit courts to fill a vacancy in the office of United States Attorney.  *See* An Act to Give Greater Efficiency to the Judicial System of the United States, 12 Stat. 768 (Mar. 3, 1863) ("In case of a vacancy in the office of marshal or district attorney in any circuit, the judge of such circuit may fill such vacancy, and the person so appointed shall serve until an appointment shall be made by the President . . .").  Thirty five years later, Congress transferred that power of appointment to the district courts, whose judges were more readily accessible.  *See* H.R. Rep. No. 1317, 55th Cong., 2d Sess. 1 (1898).  That power has resided with the district courts ever since, with the exception of a brief hiatus in 2006.[1]  The Court is persuaded by Judge Black's analysis and adopts it herein, concluding that the Court's limited power of appointment of United States Attorneys under 28 U.S.C. § 546(d) is not inconsistent with any constitutional principles embraced by the Founding Fathers, nor is it inconsistent with historical practice in this country.

    **B.**    **The Court's Appointment of the United States Attorney Does Not Violate the Separation of Powers Doctrine**

---

[1] That year, Congress struck the 120-day limitation of Section 546(c)(2) and eliminated Section 546(d) entirely.  USA PATRIOT Improvement and Reauthorization Act of 2005, Pub. L. No. 109-177, 120 Stat. 246.  However, in 2007 Congress reversed itself, restoring both provisions.  *See* Preserving United States Attorney Independence Act of 2007, P.L. 110-34 (June 14, 2007).

Congress has generally vested the appointment of United States Attorneys in the President of the United States, with the advice and consent of the Senate. 28 U.S.C. § 541(a). In the event a United States Attorney's position becomes vacant, Congress has divided the responsibility for making an interim appointment between the Attorney General and the district courts. Under 28 U.S.C. § 546, the Attorney General may appoint a United States Attorney for a district in which the office of the United States Attorney is vacant for 120 days. After that appointment expires, "the district court for such district may appoint a United States attorney to serve until the vacancy is filled." 28 U.S.C. § 546(d). The district court has the authority to appoint a prosecutor only where, as here, the Executive fails to do so. *In re Farrow*, 3 F. 112, 116 (C.C.N.D. Ga. 1880) (predecessor statute authorizing judicial appointment of interim United States Attorney "was not to enable the circuit justice to oust the power of the President to appoint, but to authorize him to fill the vacancy until the President should act, and no longer").

An appointment under Section 546(d) confers upon the appointee all the powers of a United States Attorney. *See In re Doyle*, 839 F.2d 865, 866 (1st Cir. 1988); *see also In re Grand Jury Proceedings*, 673 F. Supp. 1138, 1142 (D. Mass. 1987) (appointment under Section 546(d) results in an "actual, fully empowered United States Attorney."). However, nothing in Section 546(d) grants the district court any power to infringe upon the President's prerogative to remove an interim United States Attorney after he is appointed. Rather, the power to remove a United States Attorney rests exclusively with the President, who may exercise that power for any reason. 28 U.S.C. § 541(c); *see also Parsons v. United States*, 167 U.S. 324 (1897). An interim United States Attorney must relinquish the position when a Presidential appointee becomes qualified, either through the nomination and confirmation process or through a recess appointment. Likewise, nothing in Section

4

546(d) confers upon district judges any supervisory power over an interim United States Attorney after his appointment.  Rather, these controls remain in the Executive Branch, where they have resided for more than a century.

The Supreme Court has addressed similar issues of delegation of certain powers to the judicial branch, finding no separation of powers violation.  For example, in *Morrison v. Olson*, 487 U.S. 654 (1988), former government officials brought suit challenging the authority of independent counsel appointed under provisions of the Ethics and Government Act.  The Supreme Court held that the judiciary's power of appointment of the independent counsel was constitutional and did not violate the separation of powers doctrine.  Indeed, the *Morrison* court discerned no "inherent incongruity about a court having the power to appoint prosecutorial officers," 487 U.S. at 676, adding that "in light of judicial experience with prosecutors in criminal cases, it could be said that courts are especially well qualified to appoint prosecutors."  *Id*. at 676 n. 13.   The court also emphasized the fact that the appointing judges lacked supervisory authority over the independent counsel.  *Id*. at 681.  Finally, in *Morrison* the Supreme Court indicated in straightforward terms that having judges appoint prosecutors will not, in and of itself, impugn the judiciary's institutional integrity. Indeed, the *Morrison* court used the example of judicial appointment of interim United States Attorneys to illustrate that the task is not incompatible with judicial functions.  *Id*. at 676-77. In a related vein, the Supreme Court also noted "the longstanding judicial practice of appointing defense attorneys for individuals who are unable to afford representation ... notwithstanding the possibility that the appointed attorney may appear in court before the judge who appointed him." *Id*. at 677 n. 14.

Similarly, in *Mistretta v. United States*, 488 U.S. 361 (1989), the petitioner challenged the

constitutionality of the Guidelines promulgated by the United States Sentencing Commission, a body composed of both judges and non-judges. Mistretta, who was under indictment on three counts centering in a cocaine sale, argued that the Commission was constituted in violation of the separation of powers principle, and that Congress had delegated excessive authority to the Commission to structure the Guidelines. In holding the Sentencing Guidelines to be constitutional, the Supreme Court concluded that Congress neither delegated excessive legislative power to the Commission nor violated the separation of powers principle by placing the Commission in the Judicial Branch. The Court observed, "[w]e [] have recognized, however, that the separation-of-powers principle, and the nondelegation doctrine in particular, do not prevent Congress from obtaining the assistance of its coordinate Branches." 488 U.S. at 372. The Court also concluded that the placement within the judiciary of an independent agency charged with the promulgation of sentencing guidelines could not be construed as preventing the Judicial Branch "from accomplishing its constitutionally assigned functions." *Id*. at 395-96 (quoting *Nixon v. Administrator of General Services*, 433 U.S. 425, 443 (1977)). The Court noted that sentencing is a field in which the judiciary had long exercised substantive or political judgment, pointing out that Congress placed the Sentencing Commission in the Judicial Branch precisely because of the its special knowledge and expertise.

Both *Morrison* and *Mistretta* support the conclusion that Section 546(d) does not violate the separation of powers doctrine. The Court agrees with the First Circuit's analysis of this issue in *United States v. Hilario*, 218 F.3d 19 (1st Cir. 2000), in which the court examined the same arguments raised by Gutierrez in this case. Relying upon in *Morrison* and *Mistretta*, the court concluded that "the judicial appointment of interim United States Attorneys does not impermissibly

encroach on executive powers" and that "our system of government rests on the assumption that officers can be independent of their appointers." *Id*. at 27.  The First Circuit reasoned:

> [T]he power to appoint is tempered in ways that ensure the appointee's independence.  In this regard, we deem it especially significant that section 546(d) neither grants the judges of the district court authority to supervise or remove an interim United States Attorney whom they have appointed nor gives them power to determine (or even influence) how the appointee will enforce the laws.  *Cf. Morrison*, 487 U.S. at 681, 108 S.Ct. 2597 (emphasizing appointing judges' lack of supervisory authority). Under those circumstances, it is unreasonable to think that merely making an interim appointment impermissibly entangles judges in the functioning of the Executive Branch.

*Id*.  Relying upon *Morrison*, the court observed that the federal courts have long had the power to appoint criminal defense attorneys for those unable to afford representation, even though those same attorneys often appear before the appointing court—a task that is not incompatible with judicial functions.  *Id*. at 28 (citing *Morrison*, 487 U.S. at 677 n.14).  The same is true of the appointment of a prosecutor.  The Court concluded that "we do not believe that section 546(d), by giving courts the option of naming an interim United States Attorney to avoid a vacancy, undermines public confidence in the disinterestedness of the Judicial Branch."  *Id*. at 29.

Gutierrez cites no authority to the contrary, nor does he distinguish the judiciary's power of appointment of counsel for the indigent.  He utterly fails to explain how it can be improper for the Judicial Branch to hold one power of appointment and not the other.  In light of the foregoing, the Court concludes that its exercise of its statutory power to appoint an interim United States Attorney does not violate the separation of powers doctrine.

### C.   The Court's Appointment of the United States Attorney Does Not Violate the Appointments Clause of the Constitution

The Appointments Clause of the Constitution states that the President, with the advice and

consent of the Senate, nominates ambassadors, Supreme Court justices, "other public Ministers and Counsels," and others, but that "the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments."  U.S. Const., Art. II,§ 2, cl. 2.

First, Gutierrez argues that United States Attorneys are not "inferior" officers within the meaning of this clause, and therefore Congress has no right to vest the power of their appointment in the judiciary.  However, he ignores the Supreme Court's opinion in *Myers v. United States*, 272 U.S. 52, 159 (1926), in which the court referred to United States attorneys as inferior officers.  More recently, the Supreme Court addressed the question of who is an inferior officer in both *Morrison* and *Edmond v. United States*, 520 U.S. 651 (1997).  In *Morrison*, 487 U.S. 654, the Court determined that an independent counsel was an inferior officer because her duties were limited, her performance of those duties was restricted by the policies of the Department of Justice, her jurisdiction was confined to particular matters, her tenure was restricted to the time it took to complete her assignment, and she held office subject to removal by the Attorney General (indicating that she was inferior to the Attorney General in rank and authority, even though she was not subordinate to him).  *See id.* at 671-72.  However, the Supreme Court declined to adopt a precise formula for determining whether an officer is "inferior," declaring that it had no need to "decide exactly where the line falls between [principal officers and inferior officers]."  *Id*. at 671.  Thus, the ruling in *Morrison* suggests that the analysis of the question of whether one is a principal or inferior officer need not be restricted to analyzing the factors set forth in that case.  Nine years later in *Edmond*, Justice Scalia writing for the Court  rejected the notion that the *Morrison* factors were the "exclusive criterion for distinguishing between principal and inferior officers."  520 U.S. at 661.

Rather, the court defined the term "inferior officer" as encompassing those who have "a superior" and "whose work is directed and supervised at some level by others who were appointed by Presidential nomination with the advice and consent of the Senate." *Id*. at 663. Given that independent counsels are not subject to such supervision, there is some tension between this definition and the Court's earlier holding in *Morrison*—a decision in which Justice Scalia was the sole dissenter. In any event, *Edmond* did not expressly overrule *Morrison*, but rather cited it as precedent. *See id.* at 661.

Applying the analysis of *Edmond* to United States Attorneys, this Court concludes that they are inferior officers whose are subject to the direction and supervision of the United States Attorney General, an officer appointed by the President and confirmed by the Senate. For example, 28 U.S.C. § 519 provides that "the Attorney General shall supervise all litigation to which the United States, an agency, or officer thereof is a party, and shall direct all United States attorneys . . . in the discharge of their respective duties."; *see also id.* § 516 (reserving litigation on behalf of the United States to officers of the Department of Justice "under the direction of the Attorney General"). Congress has granted the Attorney General the power to remove a United States Attorney from participation in a particular case and conduct such a case himself whenever he believes that it would be "in the interests of the United States" to do so. 28 U.S.C. § 518(b). Finally, as the First Circuit pointed out in *Hilario*, 218 F.3d at 25, the Attorney General has the power to determine the location of a United States Attorney's offices, *see id.* § 545(b), to direct that he file reports, *see id.* § 547(5), to fix his salary, *see id.* § 548, to authorize his office expenses, *see id.* § 549, and to approve his staffing decisions, *see id.* § 550. Furthermore, there is nothing new about this supervisory scheme. For more than a century the Supreme Court has recognized that the Attorney General "has the

authority, and it is made his duty, to supervise and conduct all suits brought by or against the United States . . . and his district attorneys who do bring them in the various courts are placed under his immediate supervision and control." *United States v. San Jacinto Tin*, 125 U.S. 273, 278-79 (1888). In light of this supervisory regime, this Court concludes that United States Attorneys are inferior officers under the *Edmond* test. Gutierrez is correct in noting that the Tenth Circuit has not reached this issue. However, both the First and Ninth Circuit Courts of Appeals, relying upon *Edmond*, have held that United States Attorneys are inferior officers within the meaning of the Appointments Clause. *Hilario*, 218 F.3d at 24-26; *United States v. Gantt*, 194 F.3d 987, 999-1000 (9th Cir. 1999).

Next, Gutierrez argues that the appointment is improper under the Supreme Court's decision in *Morrison*, 487 U.S. at 675-76, in which the Court stated that Congress may not use the Appointments Clause to vest the appointment power of an "inferior" officer in a branch which results in some "incongruity" between the functions normally performed by the courts and the performance of their duty to appoint.[2] Gutierrez argues that the Court's appointment of the United States Attorney is incongruent with the Court's function because it involves the Court in the political process, thereby undermining judicial impartiality and the appearance of impartiality. However, Gutierrez ignores the fact that the Court lacks any power to either supervise or remove the United States Attorney once appointed. Once in office, the United States Attorney has all the independence, powers and authority of his office and owes no duty or obedience to the appointing court beyond the obligations of professionalism and candor to the court owed by any other attorney. Rather, it is well settled that United States Attorneys fall under the supervision and control of the United States

---

[2] The *Morrison* court also stated that an appointment that violated the separation of powers doctrine would be inappropriate. The Court addressed that argument in Part I.B., *supra*.

Attorney General.  *United States v. San Jacinto Tin Co.*, 125 U.S. 273, 278-79 (1888); *United States v. Hilario*, 218 F.3d 19, 25 (1st Cir. 2000).  Gutierrez dangles the specter of a United States Attorney who is effectively a marionette under the manipulation of the appointing court; however, the reality is that the court has no power to control a United States Attorney.  Nothing in the plain language of Section 546(d), or any other statute or common law, grants the court such authority.  In addition, a President is free to name his own United States Attorney at any time, subject to Senate confirmation, or through his power to make recess appointments.[3]  The full measure of control and concomitant accountability remain with the Executive Branch.

Further undermining Gutierrez's argument is the *Morrison* decision, in which the Supreme Court stated that there is no "inherent incongruity about a court having the power to appoint prosecutorial officers," citing with approval lower court decisions upholding interim appointments of United States Attorneys.  487 U.S. at 676.  Speaking for the Court, Chief Justice Rehnquist observed:

> [F]ederal courts and judges have long performed a variety of functions that, like the functions involved here, do not necessarily or directly involve adversarial proceedings within a trial or appellate court.  For example, federal courts have traditionally supervised grand juries and assisted in their "investigative function" by, if necessary, compelling the testimony of witnesses.  Federal courts also participate in the issuance of search warrants, and review applications for wiretaps, both of which may require a court to consider the nature and scope of criminal investigations on the basis of evidence or affidavits submitted in an ex parte proceeding.  In *Young v. United States ex rel. Vuitton et Fils S.A.*, we recognized that federal courts possess inherent authority to initiate contempt proceedings for disobedience to their orders, and this authority necessarily includes the ability to appoint a private attorney to

---

[3] Indeed, the President's power to make recess appointments means that he will not be held hostage to the whims of a hostile Senate, as Gutierrez suggests.

prosecute the contempt.

487 U.S. at 681 n. 20 (internal citations omitted).   The majority in *Morrison*, with only Justice Scalia dissenting, sustained the judicial appointment of the independent counsel against a challenge virtually identical to the one raised by Gutierrez in this case.   Indeed, the majority added that "in light of judicial experience with prosecutors in criminal cases, it could be said that courts are especially well qualified to appoint prosecutors."   *Id.* at 676 n. 13.

Various federal circuit and district courts have rejected the arguments that Gutierrez makes here.   In *United States v. Gantt*, 194 F.3d 987 (9th Cir. 1999), the defendant argued that a certification under 18 U.S.C. § 3731 was invalid because the current United States Attorney for the Southern District of California was appointed by the judges of that district pursuant to 28 U.S.C. § 546(d).   Following *Morrison*, the Ninth Circuit held that such a judicial appointment does not violate the Appointments Clause because United States Attorneys are "inferior officers."   *Id.* at 998-99.   The Ninth Circuit followed *Gantt* in *United States v. Whitehead*, 200 F.3d 634, 641 (9th Cir. 2000), again rejecting the defendant's argument that the district court lacked jurisdiction over his case because the United States Attorney was appointed by the district judges for the Southern District of California.   *See also United States v. Hilario*, 218 F.3d 19, 21 (1st Cir. 2000) (finding that United States Attorneys are inferior officer and rejecting arguments raised by Gutierrez in this case); *United States v. Sotomayor Vazquez*, 69 F.Supp.2d 286 (D.P.R. 1999) (same); *United States v. Solomon*, 216 F. Supp. 835 (S.D.N.Y. 1963).

Thus, the Court finds no violation of the Appointments Clause.

## II.    RECUSAL BY THIS COURT IS NOT WARRANTED

Two statutes, 28 U.S.C. § 144 and § 455, govern the recusal of federal judges.   Section 144

requires the party seeking recusal to file a timely and sufficient affidavit alleging personal bias or prejudice on the part of the judge before whom the matter is pending. In order to be sufficient, the Section 144 affidavit must state facts and reasons which " 'give fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment.' " *Bell v. Chandler*, 569 F.2d 556, 559 (10th Cir. 1978) (quoting *Berger v. United States*, 255 U.S. 22, 33-34 (1921)). Under section 144, an affidavit filed in support of recusal is construed against the affiant, and there is a substantial burden on the moving party to demonstrate that the judge is not impartial. *See United States v. Burger*, 964 F.2d 1065, 1070 (10th Cir. 1992). The affidavit must be accompanied by a certificate of good faith of counsel. 28 U.S.C. § 144 ; *see also Hinman v. Rogers*, 831 F.2d 937, 938 (10th Cir.1987). Conclusions, rumors, beliefs, and opinions are not sufficient to form a basis for disqualification. *See Hinman*, 831 F.2d at 939. "A disqualification order under § 144 should be issued when a reasonable man would conclude on the facts stated (in the affidavit) that the district judge had a special bias against defendant." *Bell*, 569 F.2d at 559 (quotation omitted). To warrant recusal under Section 144, the alleged bias must be personal and extrajudicial. *See United States v. Irwin*, 561 F.2d 198, 200 (10th Cir. 1977); *Davis v. Cities Serv. Oil Co.*, 420 F.2d 1278, 1282 (10th Cir. 1970).

Section 455(a)[4], on the other hand, is broader and requires a judge to disqualify himself "in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). This is an objective standard: "what matters is not the reality of bias or prejudice but its appearance." *Liteky v. United States*, 510 U.S. 540, 548 (1994). "'If it would appear to a reasonable person that a judge has knowledge of facts that would give him an interest in the litigation then an appearance

---

[4] It appears that Gutierrez does not argue for recusal under Section 455(b).

of partiality is created even though no actual partiality exists because the judge does not recall the facts, because the judge actually has no interest in the case or because the judge is pure in heart and incorruptible.'" *See Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860 (1988) (quoting and affirming *Health Servs. Acquisition Corp. v. Liljeberg*, 796 F.2d 796, 802 (5th Cir. 1986)). Section 455(a) requires "a reasonable factual basis . . . for questioning the judge's impartiality." *Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir. 1995). This objective standard is applied assuming knowledge of all of the relevant facts. *See United States v. Cooley*, 1 F.3d 985, 993 (10th Cir. 1993). "[W]here an interest is not direct, but is remote, contingent or speculative, it is not the kind of interest which reasonably brings into question a judge's impartiality." *In re Drexel Burnham Lambert, Inc.*, 861 F.2d 1307, 1313 (2d Cir. 1988) (although judge's spouse was involved in an unrelated $30,000,000 transaction that involved a party-defendant, recusal was not required).

The catchall provision in Section 455(a) does not eliminate the "extrajudicial source" limitation of Sections 144, under which recusal on the grounds of "bias or prejudice" typically is required only when the bias or prejudice arises from a source outside judicial proceedings. In *Liteky v. United States*, 510 U.S. 540, 548 (1994), the Supreme Court explained that the "extrajudicial source" limitation arises from the statutes' pejorative uses of the words "bias or prejudice." In using these words, Congress did not intend to describe all types of unfavorable disposition toward an individual or his legal position. "Impartiality is not gullibility," and the statutes do not demand that a court approach matters before it with "child-like innocence." *Id*. at 552. Rather, the words "bias or prejudice" in Section 144 "connote a favorable or unfavorable disposition or opinion that is somehow wrongful or inappropriate, either because it is undeserved, or because it rests upon knowledge that the subject ought not to possess . . . or because it is excessive in degree." *Id*. at 550.

14

In this case, Gutierrez' assertion of judicial bias stems solely from the fact that the undersigned federal district judge, along with the majority of her colleagues, exercised the power granted to them under 28 U.S.C. § 546(d) to appoint the current United States Attorney for the District of New Mexico. Because of this exercise of power, Gutierrez argues that the impartiality of this Court "might reasonably be questioned" under Section 455(a) because "the persons who gave the authority [to Greg Fouratt] are in fact the judges who are now being asked to rule on whether or not the have the authority to do what they have already done. It is obvious the judges of this District Court would not have appointed Mr. Fouratt if they did not think they had good and sufficient legal authority." Doc. No. 25 at p.18. Pursuant to Section 144, both Gutierrez and his counsel have filed affidavits asserting that one might reasonably question the impartiality of any judge being asked to reconsider his or her initial legal judgment as to the constitutionality of Section 546(d). Such a decision by this Court to exercise what it believes is a valid statutory power, however, is closely akin to a judicial ruling, and "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky*, 510 U.S. at 555. Rather, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id*. Gutierrez points to no evidence of such a deep-seated bias in this case. Furthermore, the Court concludes that this Court's participation in the appointment of Mr. Fouratt is not enough to cause one to reasonably question the Court's impartiality in deciding Gutierrez' present motion. In fact, the Court hears motions to reconsider its previous rulings on legal matters, and does so without any improper bias or appearance of bias. That is essentially what Gutierrez is asking the Court to do

here—reconsider its prior conclusion that Section 546(d) is constitutional.  There is no reasonable basis to conclude that the Court is biased in that regard.  Accordingly, the Court declines to recuse itself from consideration of this motion.

## III.   DEFENDANT HAS FAILED TO SHOW THAT DISMISSAL OF THE INDICTMENT IS AN APPROPRIATE REMEDY

Finally, Gutierrez offers no explanation as to why the appointment of the United States Attorney justifies dismissal of the indictment.  Indeed, Gutierrez has provided no meaningful legal discussion as to why he should be entitled to any remedy at all, even if the United States Attorney's appointment were invalid.  Gutierrez has also failed to provide any showing as to how the alleged unconstitutionality of the statute would require his indictment be dismissed.

As a matter of law, the constitutionality of an appointment under Section 546(d) has no bearing upon the validity of Gutierrez' indictment.  Even if Mr. Fouratt's appointment were invalid, which it is not, "[a]n appointment of a United States Attorney that is not made as provided by the Appointments Clause does not affect the Government's power to prosecute."  *United States v. Suescun*, 237 F.3d 1284, 1287 (11th Cir. 2001).  "The constitutionality of Section 546(d) would not affect the validity of indictments ... as indictments need only be signed by 'an attorney for the government.'" *United States v. Gantt*, 194 F.3d 987, 998 (9th Cir. 1999); *see also United States v. Kouri-Perez*, 47 F. Supp. 2d 164, 166 (D.P.R. 1999); Fed. R. Crim. P. 7(c)(1) and 54(c).  There is no dispute that an attorney for the government signed Gutierrez' indictment.  Thus, there is no basis for dismissal of the indictment in this case.

In light of the foregoing,

**IT IS THEREFORE ORDERED** that Defendant Robert Gutierrez' *Motion to Dismiss Indictment Without Prejudice on the Basis That the Current United States Attorney Has Been*

*Unconstitutionally Appointed and to Recuse This Judge and All U.S. District Court Judges for the District of New Mexico* [Doc. No. 25] is **DENIED**.

_____
**UNITED STATES DISTRICT COURT**